UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No: 23-CR-237 (CJN) |
| : | |
| NATHAN EARL HUGHES, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO COMPEL

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Nathan Earl Hughes' Motion to Compel production of (1) "the approved list of all members of the media to be allowed onto the grounds or inside the Capitol on January 6" that is in possession of the United States Capitol Police (hereinafter, "USCP"), and (2) a list of individuals identified by [the government] […] as members of the media but who were not on the list" under Rule 16 of the Federal Rules of Criminal Procedure. ECF 114 at 2. In connection with this demand, the defendant alleges that he is "a freelance independent journalist, with a history of reporting on political rallies, demonstrations and protests going back to 2017." *Id.* The defendant seeks these items "to determine whether a motion to dismiss is warranted based on his disparate treatment relative to other identified media members who have not been charged" in connection with the events at the Capitol on January 6, 2021. ECF 114 at 4. In other words, defendant is seeking discovery in support of a potential selective prosecution motion arguing that he is being treated differently because of his political expression. Under *United States v. Armstrong*, 517 U.S. 456, 465 (1996), as narrowed by *Frederick Douglass Found., Inc. v. District of Columbia*, __ F.4th __, 2023 WL 5209556, at *12 (D.C. Cir. Aug. 15, 2023) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)) (citations omitted), the defendant must make a showing of discriminatory effect to receive discovery in support of a First Amendment selective

prosecution claim. He fails to do so because he cannot demonstrate that he is similarly situated to individuals not prosecuted by the government.

## FACTS AND PROCEDURAL HISTORY

The government has previously set forth the detailed facts of this case, *see* ECF 56-1, and incorporates them by reference, but again briefly sets forth the facts as relevant to this motion.

While the defendant was *en route* to D.C from Arkansas. on January 4, 2021, he replied to a tweet from Individual-1, a person whose identity is known. Individual-1's tweet indicated that their purpose in Washington was to "fight fir (sic) our Republic!" The defendant's response to this tweet was "See you soon brother!" On the morning of January 6, 2021, the defendant attended the "Stop the Steal" rally hosted by the former president. The defendant was wearing a red t-shirt with an image of Donald Trump flexing his bicep that he wore over a gray hooded sweatshirt. At some time between when the rally ended and approximately 2:30 p.m., the defendant changed into items better concealing his appearance, including a black and camouflage hat and a red bandana that he wore to cover the lower half of his face for the duration of his time at the Capitol.

The defendant entered the restricted area around the Capitol after 2:30 p.m. There, he approached the area known as the tunnel on the Lower West Terrace. On January 6, the tunnel was the scene of one of the longest and most violent efforts by the rioters to overcome the police officers who, despite being drastically outnumbered, were preventing the rioters from entering the Capitol at this location. During the approximately three and a half hours that the rioters fought against the officers, the rioters used chemical sprays, stolen police shields, flag poles, and other weapons to try and break through the police line, assaulting dozens of officers in the process. One of the methods adopted by the rioters in the Lower West Terrace tunnel was to push in

synchronized movements against the police officers, such that the police officers in the tunnel had to sustain the weight of the entire mob pushing against them at once in a unified movement.

At approximately 3:15 p.m., the defendant was standing at the mouth of the tunnel. He then turned to the crowd behind him, signaled the crowd forward with his arm, and shouted "C'mon!" before charging into the tunnel himself. Inside the tunnel, the defendant engaged in the synchronized pushing against police officers for approximately three minutes. During this time, he also stole or tried to steal multiple police officers' riot shields and passed them back to the crowd behind him. Once the officers began pushing the rioters from the tunnel, Hughes tried again to steal an officer's police shield. Seconds before he was pushed from the tunnel, Hughes elbowed an officer multiple times.

The defendant remained in the vicinity of the Lower West Terrace tunnel until at least 4:50 p.m. At no point, based on the government's review of the evidence, did he use a camera or phone to document the events at the Capitol. During the entire time that he was present in the vicinity of the Capitol, except for one instance where it fell off of his face in the tunnel, the defendant never removed his bandana face covering. In connection with the events in D.C., Hughes posted the following statements to social media, respectively on Facebook and Twitter:



*Figure 1.*        *Figure 2.*



*Figure 3.*

Sometime after January 6, 2021, the defendant was identified as having participated in the riot at the Capitol. The defendant also deleted all his social media accounts sometime in the summer of 2021, to the government's knowledge.[1]

The defendant was charged via criminal complaint on August 18, 2023, see ECF 56, and was arrested on August 30, 2023. On September 13, 2023, the grand jury returned a superseding indictment in the case of *United States v. Jay James Johnston et al.*, 23-cr-237, which added the defendant to the existing indictment. The indictment charges the defendant with violations of 18 U.S.C. §§ 111(a)(1), 231(a)(3), 1752(a)(1) and (2), and 40 U.S.C. § 5104(e)(2)(E). Trial is scheduled to begin July 15, 2024.

## ARGUMENT

Hughes' motion overlooks controlling precedent that is fatal to his request. He seeks discovery—a list of credentialed media members and a list of all members of the media identified

---

[1] Days after the defendant was arrested, a Twitter account with the same username, @RallyNate, became active again and has sporadically been used to post updates on his criminal case.

in the government's January 6 investigation—for the purpose of filing a motion to dismiss for "government misconduct/selective prosecution" based on a "claim of disparate treatment"; namely, that the government is prosecuting Hughes because of "the content of his First Amendment activities." ECF 114 at 6.  Caselaw establishes that he is not entitled to this discovery without first making a heightened showing that he is being treated differently from those who were similarly situated but for his political views.  This he cannot do, for two main reasons: because he actively joined the riot and committed violence against the officers, he is not similarly situated to journalists who did no such thing; and second, he fails to show that he actually was a journalist in the first place.  The Court must deny his motion, as courts have denied all other similar selective-prosecution motions brought to date in January 6 cases.

   A. **Legal Standard**

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's . . . charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted). The presumption of regularity "also stems from a concern not to unnecessarily impair the performance

of a core executive constitutional function." *Armstrong*, 517 U.S. at 465.  A request for discovery in support of a claim of selective prosecution imposes a significant burden on the government, as it "requires discovery into the Government's files, an effort that will 'divert prosecutors' resources' and possibly disclose their strategy." *United States v. Judd*, 579 F. Supp. 3d 1, 4-5 (D.D.C. 2021) (MaFadden, J.) (quoting *Armstrong*, 517 U.S. at 468). "[A] defendant must [thus] present 'at least a colorable claim' of selective prosecution before any discovery is permitted." *Id.* at 5 (quoting *United States v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982) (per curiam)). A colorable claim requires "some evidence tending to show the existence of the essential elements" of selective prosecution. *Armstrong*, 517 U.S. at 468 (internal quotation marks and citations omitted). "This 'colorable claim' standard is a 'significant' and 'rigorous' one not easily surmounted." *Judd*, 579 F. Supp. 3d at 5.

      A claim of selective prosecution seeks to rebut the presumption of regularity by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *Armstrong*, 517 U.S. at 463, "such as race, religion, or other arbitrary classification," *id*. at 464 (citation omitted). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463. "[T]he D.C. Circuit has called for a two pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); *see also Irish People, Inc.*, 684 F.2d at 946. "This is a rigorous test; 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v.*

*Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). More recently, in the First Amendment context, the D.C. Circuit has held that, "to make out a First Amendment selective enforcement claim, the [individual] is not required to allege discriminatory intent.'" *Frederick Douglass Found., Inc. v. District of Columbia*, __ F.4th __, 2023 WL 5209556, at *12 (D.C. Cir. Aug. 15, 2023) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)) (citations omitted). Discriminatory effect – a showing that the defendant has been treated differently from similarly situated individuals – is still required.

Courts in this district, including this Court, have rejected similar selective prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6. *See, e.g.*, *United States v. Miller*, 21-CR-119 (CJN), ECF 67 (. Dec. 21, 2021); *United States v. Bennet*, 21-CR-312 (JEB), 2023 WL 6847013 October 17, 2023) (also denying motion to compel discovery for a selective prosecution claim); *United States v. Costianes*, 21-CR-180 (RJL) ((April 27, 2023) (Minute Order) (same); *United States v. McHugh*, 21-CR-453 (JDB), 2023 WL 2384444, at *13 (Mar. 6, 2023); *United States v. Padilla*, 21-CR-214 (JDB), 2023 WL 1964214, at *4-6 (Feb. 13, 2023); *United States v. Brock*, 21-CR-140 (JDB), 2022 WL 3910549, at *11-12 (Aug. 31, 2022); *United States v. Rhodes*, 22-CR-15 (APM), 2022 WL 3042200, at *4-5 (Aug. 2, 2022) (Mehta, J.); *United States v. Judd*, 579 F. Supp. 3d at 5-9; *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. July 2, 2021) (McFadden, J.). To the government's knowledge, no court in this district has granted such a motion in the January 6 context.

**B. The defendant fails to proffer evidence supporting an inference of selective prosecution.**

The defendant, in support of a potential motion to dismiss for selective prosecution, seeks discovery that in support of the argument that he has been prosecuted based on his political beliefs, whereas other "journalists" who are similarly situated to him (but with different political views)

have not been prosecuted. In both law and fact, his allegation fails to establish a basis for discovery of the materials sought.[2]

To obtain discovery on a First Amendment selective prosecution claim, the defendant must set forth evidence that the prosecution "had a discriminatory effect," *Armstrong*, 517 U.S. at 465, by showing that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Irish People*, 684 F.2d at 946 (citation omitted). As one judge has explained, an individual may be similarly situated to the defendant if*:*

> [He] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*Stone*, 394 F. Supp. 3d at 31 (Berman Jackson, J.) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008). "A similarly situated offender is one outside the protected class who has committed roughly the same

---

[2] The defendant seeks this discovery under Rule 16, but this type of demand under the rule has also been disallowed by binding Supreme Court and D.C. Circuit precedent. *Armstrong*, 517 U.S. at 462-464; *Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000). Rule 16 requires disclosure of items that are material to preparing the defense, any item that the government intends to use in its case-in-chief at trial, and any item that was obtained from or belongs to the defendant, among others. Fed R. Crim. P. 16(a)(1)(e)(i)-(iii). The items the defendant seeks to compel are neither intended for use in the government's case-in-chief nor belonging to or obtained from the defendant, which eliminates the applicability of Rule 16(a)(1)(E)(ii)-(iii). Thus, the only conceivable basis to demand production under the rule would be Rule 16(a)(1)(E)(i). However, because the defendant is expressly making this demand in support of a potential motion to dismiss for selective prosecution, ECF 114 at 2-4, his demand fails. *Armstrong*, 517 U.S. at 462-464; *Rashed*, 234 F.3d at 1285. An item is only material for purposes of Rule 16 if it will allow a defendant "to alter the quantum of proof in his favor." *Graham*, 83 F.3d at 1474. This alteration of the quantum of proof must be done by refuting some aspect of the government's case-in-chief and not by "establishment of an independent constitutional bar to the prosecution." *Rashed*, 234 F.3d at 1285; *see also Armstrong*, 517 U.S. at 463 ("[Rule 16] authorizes defendants to examine government documents material to the preparation of their defense against the Government's case in chief, *but not to the preparation of selective prosecution claims*." (emphasis added)). The defendant's motion to compel thus fares no better when framed as a Rule 16 request. *Id.*

crime under roughly the same circumstances but against whom the law has not been enforced." *Id.* at 27 (internal citations omitted). "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). Among the factors that must be considered when determining if defendants are "similarly situated" are "the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Lewis*, 517 F.3d at 27-28 (internal citations omitted).

Here, the defendant fails to identify any sufficiently "similarly situated" individual or group of individuals that the government afforded "different treatment," in two respects. *Armstrong*, 571 U.S. at 470. First, he cannot identify any individuals with different political views who engaged in the same conduct he did – assaulting and obstructing law enforcement – but have not been prosecuted. His conduct, in fact, places him in a category of individuals who *are* being prosecuted. The defendant entered the restricted perimeter around the Capitol and then participated in a synchronized push against police officers inside of the Lower West Terrace tunnel in an effort to breach the building at that location; when he was being pushed from the tunnel, the defendant then struck an officer with his elbow multiple times. Those actions alone demonstrate that the defendant is not "similarly situated" to journalists who did not commit assaults or obstruct officers. Defendant's active participation in the riot places him among several other individuals who committed crimes while claiming to act as "journalists" that day – including one recent case involving a defendant with political views different from the defendant's, who, for example, said that he supported neither then-President Trump nor then-President-elect Biden and that he was

willing to join a variety of political causes in support of his anti-government and anti-authority views. *United States v. John Earle Sullivan*, 21-CR-78 (RCL), Gov. Ex. 690-C0082.MP4.[3]

But, in any event, and as this Court knows, being a journalist does not exculpate a person from engaging in criminal conduct. *See, e.g.*, *United States v. Shroyer,* 21-cr-5422 (TJK) (defendant who claimed to be a journalist sentenced to 60 days of incarceration after pleading guilty to a violation 18 U.S.C. § 1752(a)(1)); *United States v. Resnick*, 23-cr-443 (RC) (journalist pled guilty to civil disorder); *United States v. Horn*, 21-cr-301-TJK (defendant convicted at trial after claiming to be a journalist); *United States v. Rivera*, 21-cr-60 (CKK) (defendant claiming to be journalist convicted at trial). What these so-called journalists have in common—a trait Hughes shares with them—is that they all committed crimes at the Capitol; rather than just being there to document the riot, they joined it.

The defendant's "similarly-situated" claim also fails because he cannot plausibly argue that he was acting as a journalist on January 6 and was thus similarly situated to credentialed members of the media whom he claims have not been prosecuted. As noted above, he did not appear to record any of what was happening on January 6, such as when he passed a stolen riot shield or assaulted officers. Posting to social media a "recap" of a riot in which he participated does not transform him into a journalist. The other posts that the defendant made on his Twitter account were also not journalistic but instead, as the riot was unfolding, encouraged the rioters at the Capitol to use violence against police and, after police had regained control of the Capitol,

---

[3] "I had a problem with racist people, but Trump supporters: never been a thing for me. It's just what other people want to push a narrative and say that I hate all Trump supporters. I don't fucking hate all people because of your political ideology. I believe there's fucked up shit in America. If you think voter fraud is fucked up—I never vote because I don't think ballots count and I've said that from day one. So, we're pretty much on the same page. Do I think Trump should be in office? Absolutely not. But neither do I think Biden should be in office. That being said, I am ready to side with anybody who is ready to rip shit down and put something new in place—something better in place. Pretty simple."

indicated his willingness to engage in further violence. *See* Figures 1-2. This behavior is inconsistent with someone who is acting as a journalist. The defendant also does not proffer any information to suggest that he has ever held a press credential, been otherwise affiliated with a news organization, or identified himself as a member of the news media. And if his social media accounts simply contain reporting, it is unclear why he would have deleted them all—and, having done so, his unsupported assertions about their contents should not be credited.

The government also disputes the defendant's claim that he ever "was a freelance journalist for several years prior to January 6, 2021." ECF 114 at 5. [4] After more than a year of investigating the defendant and his activities in the lead-up to and on January 6, 2021, the government has uncovered no corroborative evidence that would support the conclusion that the defendant was a freelance journalist on January 6. The government has also not found, either before or after the defendant's arrest in this case, any public media, outside of self-serving submissions, that suggest that the defendant formally occupies a role of a journalist.

Thus, unlike other credentialed journalists who are associated with newsgathering entities, the defendant proffers no information to suggest that he has ever held a press credential or been otherwise affiliated with a news organization. Other journalists are therefore improper "comparator[s]" because they are not similarly situated. *Stone*, 394 F. Supp. 3d at 31. It follows that the situational and evidentiary differences between the defendant and those there for newsgathering on January 6 would be "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions." *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997).

---

[4] The defendant did not consult with the government before representing that this fact was "not disputed." ECF 114 at 5.

**CONCLUSION**

For the foregoing reasons, this court should deny the defendant's motion to compel discovery.

                        Respectfully submitted,

                        MATTHEW M. GRAVES
                        UNITED STATES ATTORNEY
                        D.C. Bar No. 481052

By:    *s/ Sean P. McCauley*
         SEAN P. McCAULEY
         Assistant United States Attorney
         New York Bar No. 5600523
         601 D Street NW
         Washington, DC 20530
         Sean.McCauley@usdoj.gov

         KAITLIN KLAMANN
         Assistant United States Attorney
         Illinois Bar No. 6316768
         601 D Street NW
         Washington, D.C. 20530
         Kaitlin.klamann@usdoj.gov