UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 23-cr-237 CJN |
| ) | |
| NATHAN EARL HUGHES ) | |
| ) | |
| Defendant ) | |

**DEFENDANT NATHAN HUGHES' REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

NOW COMES Defendant Nathan Hughes, by and through his undersigned counsel of record, William L. Shipley, and files this Reply Memorandum in response to the Government's Opposition to the Motion to Suppress.

A. <u>The Probable Cause Set Forth in the Affidavit in Support of the Application for the Warrant was Stale</u>

This case does not involve the suspected possession of child pornography.

This case does not involve the investigation ongoing criminal conspiracy or enterprise such as drug trafficking.

Cases of both types identified above have unique attributes to the commission of them and the evidence often found during searches done as part of such investigations.

The facts of this case are so completely different as to make the case law cited by the Government – sometimes with questionable clarity or candor – inapposite and unavailing in its effort to salvage the clear facial deficiency of probable cause to justify the application in this case more than 31 months after the Defendant and his alleged criminal conduct were identified.

The Government cites multiple cases in an effort to salvage its searches challenged by this motion.  Defendant Hughes agrees that the issue of "staleness" is fact-bound, and the passage of time that might result in probable cause being stale in one set of circumstances does not equate to probable cause being stale in different circumstances.  The most obvious example noted by the Government is from cases involving child pornography where a myriad

of cases in all the Federal Circuits held that because such material is often kept as part of a "collection" or "library" by offenders over many years, probable cause justifying a lawful search must be considered within such factual scenarios that extend the time period for consideration of "staleness" into years rather than days, weeks or months.

But the cases relied upon by the Government do not solve its problem here because none involve remotely similar factual circumstances that justify stretching the window of time. The considerations that militate against that are the 31+ months together with the nature of the alleged offense and the nature of the evidence sought.

In *United States v. Bruner*, 657 F.2d 1278 (D.C. Cir. 1981), the D.C. Circuit evaluated the "staleness" of probable cause for a residential search warrant issued in January 1978 based on probable cause from the "summer" or "fall" of 1977. The nature of the investigation was a *drug trafficking conspiracy* ongoing for six years or longer by a long-time D.C. resident, along with statements by that individual that the evidence being sought by the warrant would be maintained in his residence as long as he was engaged in drug sales. *Id.*, at 1299 ("Most importantly, the affidavit indicated that Lynch intended to keep the drug display cabinet as long as he dealt drugs. This, when coupled with the … the background information in the affidavit indicating that Lynch had been involved in a major drug conspiracy for over six years that the conspiracy continued to exist, made it ultimately reasonable for the magistrate to find there was probable cause… at the time he issued the warrant.")

In *United States v. Ginyard*, 628 F. Supp. 3d 31 (D.D.C. 2022), Judge Kollar-Kotelly rejected a "staleness" claim in an "animal cruelty" investigation where the probable cause involved multiple episodes described by witnesses over a period 3 months, including one episode only days prior to the warrant being sought. *Id.*, at 47 ("[T]he Court agrees with the Government that the 'three-month period covered by the affidavit does not suggest that the evidence was stale, but instead showed a continued course of conduct over an extended period of time.' Gov.'s Opp'n at 13. And, the third alleged incident occurred mere days before HLEO Matheson sought the Search Warrant in this case.")

In *United States v. Savoy*, 880 F.Supp.2d 78 (D.D.C. 2012) – a case cited in the Defendant's motion – Judge Lamberth emphasized in that the D.C. Circuit had been much more lenient in assessing the "currency" of the probable cause information in circumstances where the alleged criminal activity was a continuing conspiracy as compared to situations where the investigation is of "single-incident crimes" citing and quoting *United States v. Webb*, 233 F.3d 890, 905 (D.C. Cir. 2001). Judge Lamberth noted that the D.C. Circuit had approved warrants in ongoing conspiracy cases where the probable cause information was 109 days old, while expressing some "discomfort." He also noted in *United States v. Lindsay*, 596 F.Supp.2d 55 (D.D.C. 2009), he had rejected probable cause as "stale" when it was dated 178 days prior to the application for the search warrant. *Savoy*, 889 F.Supp.2d at 90-91. In affirming the warrant's probable cause in *Savoy*, Judge Lamberth reiterated the view of the Circuit that the calculation is different in an ongoing criminal

conspiracy investigation such as the drug trafficking case before him as compared to a single-incident crime. *Id.*

Close attention should be given to the Government's citation of *United States v. Edelin,* 128 F. Supp. 2d 23, 46-47 (D.D.C. 2001), another opinion from Judge Lamberth where – as the government notes parenthetically – Judge Lamberth listed a collection of cases where warrants were approved based on probable cause information aged from 18 months to 3 ½ years. But the Government fails to acknowledge that the cases collected by Judge Lamberth in his opinion all involved long-standing and ongoing criminal conspiracies, unlike the situation here. Judge Lamberth cited the following cases:

*United States v. Rowell*, 903 F.2d 899, 903 (2nd Cir. 1990) (Eighteen month old information reliable because evidence related to a *drug distribution business*);

*United States v. LaMorte*, 744 F. Supp. 573, 575 (S.D.N.Y. 1990) (Three and one-half years not too distant where evidence sought was of a *massive criminal enterprise* and was of a type that would be maintained long after criminal activity ceased);

*United States v. Glass Menagerie, Inc.*, 721 F. Supp. 54, 58-59 (S.D.N.Y. 1989) (Two and one-half year old information was reliable when evidence sought was of a *narcotics paraphernalia manufacturing business*).

Judge Lamberth also noted one case where updated information corroborated the stale information in the affidavit, thereby minimizing the significance of the age of the probable cause in a *narcotics trafficking case* -- *United States v. Butler,* 102 F.3d 1191, 1198 (11th Cir. 1997)(finding

information two years old not stale when additional information updated and substantiated older information).

The Government also draws this Court's attention to a collection of cases specifically dealing with clothing to argue that where such objects are to be searched for, the concern about staleness is reduced.  The Government notes that he cases it cites to involved delays of  between six months and two years, with none having been deemed to result in the probable cause being deemed to be "stale."

The Defendant would first note that between 6 and 24 months is not 31+ months.  But more significantly, as to the 24 month case, the Government's sharp practices bordering on lack of candor with the Court rears its head again here.

In United States v. Robinson, 741 F.3d 588 (5th Cir. 2014) a Fifth Circuit case relied upon by the Government includes the parenthetical comment about the holding of the case that states as follows:

> "stating clothing seen in photographs two years prior was not stale."

What the Government doesn't disclose to the Court is that *Robinson* was a **<u>child pornography</u>** case, the child in question was the defendant's son, and the location to be searched was the defendant's house where the Defendant and his child were still believed to live.  That the case involved child pornography -- not clothing -- was crucial to the upholding the probable cause determination notwithstanding the two year passage of time, as was explained by the Fifth Circuit:

      The district court found that the date that the images were taken, more than two years prior to the search, did not render them stale information, unable to support probable cause. In particular, the district court noted that caselaw suggested that, **<u>especially in child pornography cases, older information still may be reliable</u>** because of techniques allowing for the later electronic retrieval of evidence and the fact that child pornography is usually carried out in the secrecy of the home. The district court also concluded that, "once there was a search of the business and an identity that the victim in the child pornography was the son of Mr. Robinson, then certainly there was reason to believe that items of clothing and property could be found at the home that would substantiate the likelihood that the photographs were taken in the home of the defendant."

      In other child pornography cases, this Court and others have found that similarly old information is not stale for establishing probable cause. See *United States v. Allen*, 625 F.3d 830, 843 (5th Cir.2010); see also *United States v. Paull,* 551 F.3d 516, 522–23 (6th Cir.2009) (information that the defendant subscribed to child pornography thirteen months earlier was not stale); *United States v. Newsom,* 402 F.3d 780, 783 (7th Cir.2005) ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned." (citations omitted)); *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir.1997) (upholding search warrant in pornography case based on ten-month-old information). Relevant to this inquiry is the fact that evidence of child pornography often is found in the secrecy of a defendant's home and the criminal activity is carried out over a long period. See Allen, 625 F.3d at 843 (citing *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir.2009)).

*United States v. Robinson,* 741 F.3d at 596-97.

Not once does the Court justify the validity of the two-year old information in the basis that it was clothing being sought as suggested by the Government in its brief. The Government wholly failed to note for this Court at *Robinson* was a child pornography case while including its citations of cases with dated information searching for clothing.

There are several other cases cited by the Government in its Opposition in an effort to save the probable cause from the staleness defect. But nearly

every case concerns illegal conduct involving child pornography.  One that does not is *United States v. Baker*, 888 F. Supp. 1521 (D. Haw. 1995).

In *Baker* the application to search sought evidence such as clothing and jewelry relevant to an ongoing investigation into the defendant's "pimping and pandering" activities in the Waikiki neighborhood of Honolulu.  That was factually relevant as explained by the District Judge in his opinion:

> In the instant case, there was sufficient basis to believe that the items listed in the search warrants would be at the locations specified when the warrants were issued. Based on Detective Peterson's expert opinion that ***personal items are considered a pimp's property and are communally used by the pimp's "family" of prostitutes***, it appeared very likely that the clothing and accessories K.M. left behind 18 months ago would be found at locations currently frequented by Baker and his alleged prostitutes.
>
> In addition, Special Agent Murphy's affidavit carefully established the continuous nature of Baker's pimping activities. Recent police surveillance in Waikiki confirmed that ***up until the night of his arrest and just before the issuance of the search warrants, Baker was seen talking to women believed by local authorities to be his prostitutes in Waikiki, and suspected prostitutes were seen coming and going from his South Street apartment at irregular hours.*** Where such an ongoing operation is shown, "staleness arguments lose much of their force." *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1566 (9th Cir. 1989); see also *United States v. Landis*, 726 F.2d 540, 542 (9th Cir. 1984) (continuous nature of the activity diminishes the significance of the time lag between the acts described in the affidavit and the presentation of the affidavit to the magistrate).

*Id.*, 888 F. Supp. At 1527-28.  (Emphasis added.).

The two remaining cases cited by the Government regarding staleness and clothing involved searches that were seven months and nine months after the probable cause information – not 31+ months as is the case here.  They offer no benefit to the Government's attempt here to justify its delay – which it never attempts to explain.

The Government also cites the Second Circuit in *Walczyk v. Rio*, 496 F.3d 139, 162 (2d Cir. 2007).  But it neglects to set forth the facts in *Walczyk* – or the holding.  Picking up exactly where the Government's quote from the opinion ends regarding "no bright-line rule for staleness," the Second Circuit concluded:

> Rather, a magistrate is expected to consider the age of the facts in light of the conduct at issue with a view toward ensuring that probable cause exists at the time the warrant is to be executed, not simply at some past time. [Citation omitted.]  Thus, where information is seven years old, a magistrate must be alerted to that fact to make a reasonable probable cause determination.
>
> …. In this case, however, we can conclude as a matter of law that nondisclosure of the staleness of the dual residency allegation was fatal to a demonstration of probable cause. Not only was the allegation seriously outdated, it was the sole support for a search of Elizabeth Walczyk's home…. [N]o facts were alleged indicating that Walczyk had ever stored or retrieved firearms from his parents' home, much less that he had done so in the seven years since last residing there. Defendants urged that inference simply from Walczyk's license to possess firearms and his purported residence at 27 as well as 28 Tunxis Street. Whatever questions might be raised about the strength of such an inference in any circumstance, it could not be drawn from a dual residency allegation that was seven years old.

*Id*. at 162.  The undisclosed age of the probable cause – seven years – rendered it stale and the search was in violation of the Fourth Amendment.

Finally, one of the cases cited by the Government that addresses the question of electronically stored data, *United States v. Ali*, 870 F. Supp. 2d 10, 33 (D.D.C. 2012), reflects another flaw in the affidavit submitted in support of the warrant application here.  As the Court noted in that case:

> Furthermore, the affidavits allege that Ali continued to use his email account, cell phone, and computer to communicate about piracy well after the CEC Future incident, which in itself may be enough to "defeat [Ali's] claim of staleness." *United States v. Abboud*, 438 F.3d 554 at 573 (6th Cir. 2006).

Unlike in *Ali*, the affidavit here is silent on the issue of whether the Defendant was continuing to use any electronic devices to communicate about the events at the Capitol on January 6.  Entirely absent from the affidavit is any **factual** basis to believe that any electronic devices that were in the residence to be searched that might have evidence related to those events or that day.

To paper over these defects in the affidavit, the Government abandons the facts and lapses into its well-worn "narrative" about January 6.  It cannot rationally claim that the events of January 6 were anything other than a "single-incident crime" – it started around 1:00 pm and by 6:00 pm it was over -- so it retreats behind the narrative that the events of January 6 were unlike any other single-incident crime in the history of the country so the normal rules of stalenss that apply to searches connected to single-incident crimes should not apply to Mr. Hughes.

But that narrative doesn't change the facts as to Mr. Hughes.  His rights under the Fourth Amendment do not turn on the Government's favored narrative.  In January 2021 the Government had identified the Defendant and had information it believed constituted probable cause that he engaged in criminal conduct while at the Capitol.  But for 31 months it did nothing with that information in terms of using it to justify a lawful search of his residence under the Fourth Amendment.

At some point it was just too late. The Government got around to Mr. Hughes' arrest and the search of his residence when it had time for him and his case. Unfortunately, the Fourth Amendment doesn't work that way.

The Government also tries to pull the wool over the Court's eyes by doing what was done in the affidavit – pointing out searches in unrelated January 6 cases that resulted in the seizure of relevant evidence that took place at various points in time between a January 6 and the search of the Defendant's house in August 2023.

But notwithstanding the challenge issued by the Defendant to do so, the Government still can't produce a single citation to any case holding that searches of different people in different locations at different points in time- based on different probable cause are a basis for finding "probable cause" as to Mr. Hughes 31+ months after his alleged crimes. The Government can't cite such a case because none exists.

Finally, the Government retreats to the "last refuge of the scoundrel" prosecutor who sought and obtained an unlawful warrant, i.e., "But we found the evidence we were looking for so the search was lawful."

If only that was the law. Probable cause exists – or it doesn't exist – as of the date the search warrant was sought. What might have been found during the search does not change the probable cause. That is black-letter law and the fact that the Government advances the argument it does is troubling.

B. *Leon* Good Faith Exception Does Not Save A Facially Defective Warrant.

In *Savoy,* Judge Lamberth engaged in a detailed analysis of the application of the "good faith" exception from Leon in cases where the probable cause in the warrant is insufficient.

> The Supreme Court has limited application of the Leon "good faith" exception and suppression of evidence remains an appropriate remedy where: (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;"
>
> (2) "the issuing magistrate wholly abandoned his judicial role"; (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405.

*Savoy*, 889 F. Supp. 2d at 90.

Judge Lamberth identified two cases where staleness of the probable cause was a basis to not apply *Leon* to a defective warrant pursuant to (3), where the passage of time was so problematic as to make it unreasonable for a trained law enforcement officer to rely on such information for probable cause. In *United States v. Johnson*, 332 F. Supp. 2d 98 (D.D.C. 2004), Judge Friedman identified deficiencies involving the lapse of time between an allegation that the defendant possessed a firearm on the street nearby his home, and even longer gap between the alleged gun possession and the last information that the defendant resided in the residence that was searched based on the affidavit. "The "good faith" exception does not apply because "a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization." *United States v. Hopkins*, 128 F.Supp.2d 1,

9 (D.D.C.2000) (quoting *United States v. Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405).

Even more on point is *United States v. Lindsay*, cited above, where Judge Lamberth himself refused to apply *Leon* where the gap between the probable cause and the application for a warrant was 178 days.

## CONCLUSION

Based on the foregoing, Defendant Hughes requests this Court to issue an order suppressing all evidence seized Defendant Hughes's residence, as well as any evidence obtained by the Government based on items seized from the residence.

Dated: April 26, 2024      Respectfully Submitted,

/s/ William L. Shipley
William L. Shipley, Jr., Esq.

PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*