UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:23-CR-237 (CJN) |
| : | |
| JAY JAMES JOHNSTON & : | |
| NATHAN EARL HUGHES, : | |
| : | |
| Defendants. | |

**UNITED STATES' MOTION IN LIMINE
TO ADMIT CERTAIN TYPES OF EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves this honorable court to admit certain types of evidence: (1) police body worn camera footage, surveillance taken from the United States Capitol closed circuit television (CCTV) system, and open-source video footage, and (2) certain statutes and congressional records.

**I. This Court Should Admit Certain Categories of Multimedia Into Evidence**

The United States will provide its preliminary exhibit list to the defendants and to the Court on or before June 28, 2024. *See* ECF 110. The United States anticipates, on this date, identifying, and providing to the defense, certain categories of photographic and video exhibits that it intends to offer at trial. The following sections describe certain categories of evidence and explain why each is admissible as relevant and authentic.

A. <u>Legal Framework</u>

"As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d 1325, 1329 (D.C. Cir. 1982). To satisfy this requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid.

901(a).  Rule 901(b) provides a nonexhaustive list of examples of methods for showing authenticity.  Those include, as relevant here:

> (1) Testimony of a Witness with Knowledge.  Testimony that an item is what it is claimed to be.
> . . . .
> (3)  Comparison by an Expert Witness or the Trier of Fact.  A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4)  Distinctive Characteristics and the Like.  The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> . . . .
> (7) Evidence About Public Records.  Evidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept.
> . . . .
> (9) Evidence About a Process or System.  Evidence describing a process or system and showing that it produces an accurate result. Fed. R. Evid. 901(b).

In making the showing necessary for admissibility, "the proponent's 'burden of proof'" is "slight," and the "ultimate resolution of the evidence's authenticity is reserved for the jury." *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985)); *see also United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006).  To make the requisite prima facie showing, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).  And such evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be," *Hassanshahi*, 195 F. Supp. 3d at 48 (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)).  Rather, the party offering the evidence need only "demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)).

  B.  <u>Overlapping Bases for Admissibility of Multimedia</u>

As introduced herein, there are multiple, overlapping bases that the United States intends to use for the authentication and introduction of photographs and videos at trial. The United States offers this nonexclusive list of bases for authentication should the United States be unable to enter into stipulations with the defendant in advance of trial.

   *1. Authentication by a Witness with Knowledge*

To begin, any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or video. *See* Fed. R. Evid. 901(b)(1). Here, that includes any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted. *See, e.g.*, *Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003). Any individual that observed the events depicted in the photograph or video can testify that the photograph or video appears to fairly and accurately show the events that took place. *See* FRE 901(b)(1); *see also United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event if they can (1) identify the location(s) depicted in the video; and (2) establish that the video is generally consistent with their knowledge of events that occurred during the Capitol riot. *See, e.g.*, *Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (alteration in original) (quoting *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (Kennedy, J.))); *United States v. Holmquist*, 36 F.3d 154, 169 (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without

the testimony of the photographer or some other person who was present at the time it was taken."). On this authority, the United States could authenticate riot footage through, for example, the testimony of an experienced U.S. Capitol Police officer who is familiar with all areas of the Capitol and who knows that the events of January 6 are unique in modern history. *Cf. Safavian*, 435 F. Supp. 2d at 40–42 (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141, 145–46 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions). Again, this is a low bar that requires only a prima facie showing that the evidence is what the United States purports it to be—namely, photographs and videos of the Capitol siege in progress.

### 2. *Authentication by Metadata*

Where necessary, the United States can also authenticate a photograph or video using metadata. When a digital media file is extracted from a device or otherwise seized by the government, it often contains metadata that specifies the time, and sometimes place, the file was created, along with other information. At trial, the United States will sometimes call law enforcement personnel to testify about the process of extracting data from digital devices and reviewing the extracted materials. Such testimony is sufficient to make a prima facie showing that a photograph or video was made at the time or place reflected in the metadata. *See, e.g.*, *United States v. Banks*, 43 F.4th 912, 918 (8th Cir. 2022) ("While the officers were not present when the images and videos were first captured, their testimony [about reviewing extraction reports] provided a rational basis to believe that the exhibits had been created within the relevant time frame and stored on [the defendant's] cellular phones."); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 547–48 (D. Md. 2007) ("Because metadata shows the date, time and identity of the creator of an electronic record, as well as all changes made to it, metadata is a distinctive characteristic of all electronic evidence that can be used to authenticate it under Rule 901(b)(4)."); *United States*

*v. Gilbreath*, No. 3:19-CR-127-TAV-HBG, 2020 WL 5441226, at *3 (E.D. Tenn. Sept. 10, 2020) ("Metadata […] showed that these images were created at defendant's home and on defendant's cell phone on September 12, 2015.").

### 3. Authentication by Comparison

Similarly and alternatively, in instances where precision of time and place is relevant but cannot be established by a witness with knowledge or by the media's metadata, the United States will authenticate exhibits by reference to other, already-authenticated exhibits depicting the same time and place. This method of "[a]uthentication by comparison is routine." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021); *see also United States v. Hoyt*, 946 F.2d 127, at *1 (D.C. Cir. 1991) (unpublished) (noting that Fed. R. Evid. 901(b)(3) permits authentication by comparison); *Stearns*, 550 F.2d at 1171 (finding that first picture "authenticates the other four pictures as to time"); *Safavian*, 435 F. Supp. 2d at 40 (allowing authentication of emails by means of comparison with other "e-mails that already have been independently authenticated").

### 4. Authentication Based on a Process or System that Produces an Accurate Result

Certain multimedia, such as security cameras (CCTV) operated by the U.S. Capitol Police (USCP) and body-worn cameras (BWC) worn by officers of the Metropolitan Police Department (MPD) can be authenticated by "describing a process or system and showing that it produces an accurate result," Fed. R. Evid 901(b)(9). *See United States v. Dale*, 991 F.2d 819, 843 (D.C. Cir. 1993) ("Tapes may be authenticated by testimony describing the process or system that created the tape."); *United States v. Pinke*, 614 F. App'x 651, 653 (4th Cir. 2015) (unpublished) (finding "sufficient evidence of authentication" of a prison's closed circuit video where "a Government witness explained the manner in which the prison's closed circuit video system operates, the means

by which he obtained the video, and that he downloaded it onto the DVD that was played for the jury."). USCP and MPD witnesses to be called by the United States are available to testify to the systems employed by USCP and MPD, respectively. These witnesses will be able to explain how the system is used, that it reliably records and depicts the areas that the camera faces, and the internal characteristics of videos—such as date and time stamps—which allow USCP and MPD to identify and retrieve segments of video.

> 5. *Authentication Based on Status as an "Official Publication"*

Certain evidence in this case, such as video taken by the Senate Recording Studio, is also "self-authenticating," meaning it "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902.[1] This is so because it qualifies as an "Official Publication[]," defined as any "book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). Official materials published on government websites fall into this category and are self-authenticating under Rule 902. *See Williams v. Long*, 585 F. Supp. 2d 679, 685–90 (D. Md. 2008); *cf. MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 503–04 (S.D.N.Y. 2017) (Congressional transcripts); *Singletary v. Howard Univ.*, No. 1:17-cv-01198, 2018 WL 4623569, at *4 n.1 (D.D.C., Sept. 26, 2018) (government-issued guidebook), *rev'd on other grounds*, 939 F.3d 287.

The United States Senate uses the Senate Recording Studio to contemporaneously record Senate proceedings and distribute those recordings to the public. *See* https://www.senate.gov/–floor/, last accessed Dec. 15, 2022 (publicly available archived recordings of Senate Recording Studio). The Senate Recording Studio recorded the proceedings relating to the Electoral College

---

[1] Further underscoring the multiple paths to authentication, the Senate Recording Studio footage may also be authenticated through any of the mechanisms outlined in this motion, including Fed. R. Evid. 901(b)(1), (3), (4), (9).

Certification on January 6, 2021, up to the point when the rioters breached the building and forced the proceedings into recess. *See id.*, January 6, 2021. Subsequently, the Senate Recording Studio recorded the Electoral College Certification proceedings after the rioters were cleared from the Capitol Building and the session resumed. *Id.* During the interim, the Senate Recording Studio captured footage of rioters who were present on the Senate floor during the recess.

  C.  <u>Categories of Multimedia To Be Offered</u>

The United States plans to introduce certain videos and photos recovered from the digital devices and social media accounts, as well as videos and photographs taken by third parties such as other rioters and journalists who were present inside and outside the Capitol on January 6. Among other ways, these materials can be authenticated through the processes described above.

The evidence at trial will also include video captured by law enforcement, including CCTV and BWC footage. Like any other videos, these can be authenticated by any person with direct knowledge of the scene depicted or with sufficient circumstantial knowledge, *see* Fed. R. Evid. 901(b)(1), or through metadata or comparison, *see* Fed. R. Evid. 901(b)(4). Alternatively, given the automated nature of the recording devices in question, the BWC and CCTV footage can be authenticated under Rule 901(b)(9), which allows authentication by "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(9); *see Dale*, 991 F.2d at 843; *Pinke*, 614 F. App'x at 653.

The United States also anticipates introducing videos captured by the Senate Recording Studio, which videos can be authenticated through any of the processes described above.

**II. Motion *in Limine* To Admit Certain Statutes and Records**

    A.    <u>Judicial Notice of the Federal Electoral College Certification Law</u>

The proceedings that took place on January 6, 2021, were mandated by, and directed under the authority of, several constitutional and federal statutory provisions. In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021 to proceed with the Electoral College Certification Official Proceeding, he quoted directly from, and cited to, Title 3, United States Code, Section 17.

The United States requests that the Court take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15–18 relating to the Electoral College Certification Official Proceedings. It is well established that district courts may take judicial notice of law "without plea or proof." *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012) (quoting *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004)). The United States makes this request even though "no motion is required in order for the court to take judicial notice." *Moore v. Reno*, No. 00-5180, 2000 WL 1838862, at *1 (D.D.C. Nov. 14, 2000). Further, "where a federal prosecution hinges on an interpretation or application of state law, it is the district court's function to explain the relevant state law to the jury." *See United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 49 (1st Cir. 2004).

    B.    <u>Admission of the Congressional Record and S. Con. Res 1</u>

The Congressional proceedings on January 6, 2021, were memorialized in the Congressional Record. The Congressional Record is a public record under Federal Rule of Evidence 902(5). *See MMA Consultants*, 245 F. Supp. 3d at 503–04. The United States intends to introduce portions of the Congressional Record at trial, including the bodies' "concurrent resolution to provide for the counting on January 6, 2021, of the electoral votes for President and

Vice President of the United States," S. Con. Res. 1, 117th Cong. (2021).  For the same reasons as the Senate Recording Studios footage above, these records should be admitted as self-authenticating.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to admit the above materials.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By: *s/ Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
601 D Street NW
Washington, DC 20530
Sean.McCauley@usdoj.gov

KAITLIN KLAMANN
Assistant United States Attorney
Illinois Bar No. 6316768
601 D Street NW
Washington, D.C. 20530
Kaitlin.klamann@usdoj.gov